# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES WAYNE TORRE,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

_____/

Case No. 1:25-cv-01137-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff James Wayne Torre ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the "Act").  (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born in 1988, has at least a high school education, and previously worked as a behavioral health aid.  (Administrative Record ("AR") 28, 70, 92, 211.)  Plaintiff filed a claim for DIB on July 21, 2022, alleging he became disabled on February 20, 2020, due to a back injury, an inability to walk or stand, chronic pain, and numbness.  (AR 71, 92, 211.)

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 14.)

**A.      Relevant Evidence of Record[2]**

**1.      Medical Evidence**

In January 2023, Plaintiff complained of spasms and pain in his left thigh and calf, with his knee sometimes "lock[ing] up." (AR 606.) On examination, Plaintiff had normal range of motion, normal sensation, normal strength, and normal gait. (AR 607–608.) Plaintiff reported that the Robaxin was not effective, and the provider advised to change medication to Baclofen. (AR 609.)

Plaintiff underwent MRIs of his thoracic and lumbar spine in March 2024. (AR 598–603.) The thoracic spine imaging showed "[n]o significant spinal canal or neural foraminal narrowing" and "prominent dorsal epidural lipomatosis extending from T2–T10 result[ing] in anterior displacement of the thecal sac." (AR 598.) The imaging of Plaintiff's lumbar spine revealed "[p]ostoperative changes of posterior spinal fusion spanning L3–S1, no significant spinal canal narrowing" and "[a]symmetric narrowing of the left lateral recess at L5–S1 with possible contact with the traversing left S1 nerve root." (AR 602.)

**2.      Opinion Evidence**

In November 2022, W. Jackson, M.D., a State agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[3] (AR 75–86.) Dr. Jackson found that from February 20, 2020, the alleged onset date, to February 13, 2022, there was insufficient evidence to evaluate Plaintiff's claim. (AR 78.) Dr. Jackson found that from February 14, 2022, to June 28, 2022, Plaintiff could have performed light work except frequently climbed ramps and stairs, knelt, crouched, and crawled, and occasionally climbed ladders, ropes, and scaffolds and stooped. (AR 80–83). Dr. Jackson found that after June 27, 2023, Plaintiff could perform light work except frequently stoop and climb ladders, ropes, and scaffolds. (AR 83–86.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

On reconsideration in July 2023, another State agency physician, V. Bobba, M.D., reviewed the record and found that Plaintiff could perform light work and was limited to frequently climbing ramps and stairs; occasionally climbing ladders, ropes and scaffolds; occasionally stooping; and frequently kneeling, crouching, and crawling.  (AR 95–96.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 29, 2022, and again on reconsideration on July 28, 2023.  (AR 17, 99–102, 110–13.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 114–29.)  The ALJ conducted a hearing on March 13, 2024.  (AR 35–69.)  Plaintiff appeared telephonically at the hearing with his attorney and testified as to his alleged disabling conditions and work history.  (AR 43–61.)  A Vocational Expert (VE) also testified at the hearing.  (AR 62–69.)

**C.     The ALJ's Decision**

In a decision dated June 11, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 17–30.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 19–30.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2025, and he had not engaged in substantial gainful activity since February 20, 2020, the alleged onset date (step one).  (AR 20.)  At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lower spine status post-surgery and obesity.  (AR 20–21.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 21–22.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except frequently climb ramps and stairs, kneel, crouch, and crawl and occasionally stoop and climb ladders, ropes, and scaffolds.

(AR 22–28.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 23.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but he could perform a significant number of other jobs in the local and national economies (step five).  (AR 28–29.)  The ALJ concluded that Plaintiff was not disabled from February 20, 2020, through the date of the decision.  (AR 29–30.)

Plaintiff sought review of the decision before the Appeals Council, which denied review on July 1, 2025.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or

4

combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations

5

omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

#### IV.     DISCUSSION

Plaintiff contends that the RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record. (Doc. 17.) The Commissioner responds that the record was adequately developed and the ALJ's RFC assessment was proper. (Doc. 18.) The Court agrees with the Commissioner and will affirm the ALJ's decision.

**A.     Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks

in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.    Analysis**

Plaintiff has not demonstrated that the ALJ improperly interpreted medical evidence and was required to develop the record instead. As set forth above, State agency physicians Drs. Jackson and Bobba reviewed Plaintiff's medical file in November 2022 and July 2023, respectively, and found he is able to perform a range of light exertional work. (AR 75–86, 95–96.) The ALJ concluded these opinions were "persuasive" because they were "supported by a review of the medical records available" and "consistent with the medical record," including the imaging of Plaintiff's thoracic and lumbar spine performed in March 2024. (AR 27–28.)

Plaintiff does not challenge the persuasiveness accorded by the ALJ to Drs. Jackson's and Bobba's opinions. Instead, he contends his health "changed significantly" after the opinions of the State agency physicians, rendering them "stale" and necessitating "guidance from a health care professional."[4] (Doc. 17 at 9–11 (citing AR 598, 602–603, 609).) Plaintiff does not explain,

---

[4] As an initial matter, an updated opinion is not required simply because additional medical evidence is received after the state agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id.* (explaining that "[i]n virtually every case further evidence is received after the state agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole."). "If the mere passage of time and presence of additional medical evidence in the record established ambiguity, a consultative examination would be required in every case." *Corwin v. Kijakazi*, No. 1:20-CV-00394-GSA, 2021 WL 5771658, at *6 (E.D. Cal. Dec. 6, 2021). *See Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time."). Yet the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case. *See* 20 C.F.R. § 404.1519; *Pederson v. Colvin*,

however, how the records he cites indicate a worsening of his existing condition or the emergence of new impairments.[5] *See Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (finding ALJ had no duty to develop record because "[n]one of these [additional] records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions."); *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *8 (E.D. Cal. Nov. 13, 2020) (same). The ALJ considered these records (AR 25, 26) and other evidence post-dating the State agency opinions, as well as Plaintiff's testimony that he performed household chores such as laundry, cooking and yardwork, and drove a car (AR 23). The ALJ was entitled to review and interpret this evidence. *See Razaqi v. Kijakazi,* No. 1:20-cv-01705-GSA, 2022 WL 1460204, at *7 (E.D. Cal. May 9, 2022) ("[A]n ALJ is almost always tasked with performing some independent review [of] the medical evidence that was never considered by one of the state agency's [ ] physicians, and thereafter translating the same into an RFC . . . this is indeed the ALJ's role."); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."); *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Moreover, Plaintiff does not specify what additional functional limitations in the evidence that he directs the Court to review were not accounted for in the ALJ's RFC assessment. *See Lamas v. Saul*, No. 1:19-cv-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020) (holding that although ALJ erred in evaluating a claimant's RFC without support from a medical opinion, such

31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'") (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)).

[5] *See, e.g.,* AR 607–608 (documenting normal range of motion, normal sensation, normal strength, and normal gait); AR 598, 602 (showing "[n]o significant spinal canal or neural foraminal narrowing).

error was harmless where the ALJ found more stringent limitations).  Nor does he otherwise show any inconsistency between this evidence and his RFC.[6]  *See Perry v. Saul*, No. 2:21-CV-00480-EJY, 2022 WL 959160, at *9 (D. Nev. Mar. 29, 2022) ("Nothing in the record, including Plaintiff's recent scans, is obviously inconsistent with the RFC, the calculation of which is the exclusive domain of the ALJ, and must be respected under the deferential substantial evidence standard."); *see also Carbajal v. O'Malley*, No. 1:23-CV-00319-BAM, 2024 WL 382375, at *6 (E.D. Cal. Feb. 1, 2024) ("While Plaintiff argues that the ALJ improperly interpreted the medical evidence [post-dating the state agency physicians' opinions], Plaintiff does not identify what additional functional limitations the ALJ failed to account for in the RFC assessment.  The cited medical records do not establish the existence of any new condition not considered by the ALJ, nor are they apparently inconsistent with the RFC.") (internal citations omitted).

The legal authority on which Plaintiff relies is inapposite.  (*See* Doc. 17 at 11.)  For example, in *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032 (E.D. Cal. May 26, 2020), the ALJ considered evidence subsequent to a medical opinion, made an independent evaluation of the diagnosed impairments on the plaintiff's ability to work on a function-by-function basis based on that subsequent evidence, and found the effects of any such impairments negligible.  *See id*. at *2.  Here, instead of "negligible" impairments, the ALJ ultimately formulated an RFC that included more restrictive limitations than those opined by the State agency medical consultant Dr. Jackson, to account for Plaintiff's obesity (*see* AR 28).  *See Marin v. Comm'r of Soc. Sec*., No. 1:24-CV-00055-SAB, 2024 WL 3845357, at *8 (E.D. Cal. Aug. 16, 2024) ("Unlike . . . *Mack*, the ALJ here did not interpret raw medical evidence to find Plaintiff less limited than opined by medical providers but considered the lack of objective mental findings in the mental health records and Plaintiff's testimony regarding her symptoms to find her more limited than the State agency physicians opined.").

*Cortez v. Colvin*, Case No. 1:15-cv-00102-EPG, 2016 WL 3541450 (E.D. Cal. June 24, 2016), is likewise distinguishable.  In that case, the ALJ interpreted raw medical evidence to reach

---

[6] To the extent Plaintiff is advocating for an alternative interpretation of this evidence, it is not within the province of the Court to second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to her.  *See Molina*, 674 F.3d at 1110.

their conclusions as to mental impairments, particularly as to improvement in the plaintiff's symptoms when taking his medication. *Id*. at *5. The *Cortez* court noted an "absence in the record indicating the degree to which [p]laintiff's mental impairments affected him, and what, if any, [p]laintiff's medications had on his ability to work." *Id*. at *6.

In contrast, here Plaintiff has not demonstrated that there was any "absence in the record" to allow for proper evaluation. *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency). *See also Marin*, 2024 WL 3845357, at *8; *Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez*)). This is not a situation where all of the opinion evidence in the record has been wholly discounted, resulting in an RFC determination apparently based solely on the medical record and the plaintiff's testimony. Unlike *Cortez*, the ALJ here found the State agency medical consultants' opinions "persuasive," findings Plaintiff does not challenge, and properly assessed Plaintiff's RFC based on those opinions and the "record as a whole" (AR 28); *see Bayliss*, 427 F.3d at 1217. The ALJ summarized this record evidence spanning 2020 through 2024 and found, with the support of that record, that Plaintiff had not established he was disabled. (AR 24–29.) The record, kept open for an additional 14 days after the hearing at Plaintiff's request (AR 42), contained Plaintiff's complete treatment records that supported the ALJ's findings, and no "gaps" or inconsistencies were noted. *See Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("The ALJ may discharge this duty [to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."). Notably, Plaintiff failed to submit any medical opinions as to his ability to work or his functional limitations related to his impairments. Because it is Plaintiff's burden to present evidence

of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss*, 427 F.3d at 1217; *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the State agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the Court concludes that the ALJ had no duty to develop it further and did not err in formulating the RFC.

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    **June 25, 2026**                    /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE